FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT C.,[1] <br>               Plaintiff, <br><br>    vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>            Defendant. | No. 1:19-cv-03007-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 14, 15 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

ORDER - 3

any other kind of substantial gainful work which exists in the national economy."
42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 6, 2015, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of March 17, 2015.  Tr. 237-49.  The applications were denied initially, Tr. 147-64, and on reconsideration, Tr. 166-79.  Plaintiff appeared before an

administrative law judge (ALJ) on February 15, 2018.  Tr. 45-78.  On March 23,

2018, the ALJ denied Plaintiff's claim.  Tr. 12-44.

At step one of the sequential evaluation process, the ALJ found Plaintiff had

not engaged in substantial gainful activity since March 17, 2015.  Tr. 20.  At step

two, the ALJ found that Plaintiff had the following severe impairments: lumbar

spine impairment (spondylosis, degenerative disc disease, radiculopathy),

headache, carpal tunnel syndrome, obesity, major depressive syndrome, anxiety

disorder not otherwise specified, and substance abuse disorder.  Tr. 20.

At step three, the ALJ found Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed

impairment.  Tr. 21.  The ALJ then concluded that Plaintiff had the RFC to

perform light work with the following limitations:

> [Plaintiff can] frequently reach, handle, and finger; occasionally
> balance, stoop, kneel, and crouch; never climb or crawl; and must
> avoid concentrated exposure to extreme cold, vibrations, and hazards.
> Additionally, [Plaintiff] can perform simple, routine tasks and follow
> short, simple instructions.  He can do work that needs little or no
> judgment and could perform simple duties that can be learned on the
> job in a short period.  He requires a work environment that is
> predictable and with few work setting changes.  He would not deal
> with the general public, as in a sales position or where the general
> public is frequently encountered as an essential element of the work
> process, but incidental contact of a superficial nature with the general
> public is not precluded.

Tr. 23.

ORDER - 7

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 35. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as final inspector, hand bander, and small products assembler I. Tr. 37. The ALJ found that, beginning on September 24, 2017, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 37. The ALJ concluded that Plaintiff was not disabled prior to September 24, 2017 but became disabled on that date and continued to be disabled through the date of the ALJ's decision. Tr. 37. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 17, 2015, through September 23, 2017. Tr. 37.

On January 3, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

    1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

    2. Whether the ALJ properly evaluated the medical opinion evidence; and

    3. Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 3.

## DISCUSSION

### A.   Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his subjective symptom claims. ECF No. 14 at 17-19. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 28.

*1. Inconsistent with Objective Medical Evidence*

The ALJ found that Plaintiff's physical and mental symptom complaints were not supported by the medical evidence.  Tr. 25-28.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ found Plaintiff's testimony that he was unable to work due to disabling back pain which caused him to be unable to sit, stand, or walk for

prolonged periods and required him to constantly shift positions was inconsistent with the medical evidence in the record.  Tr. 25; *see, e.g.,* Tr. 532, 636 (March 19, 2015: imaging showed only mild to moderate findings with no mention of impact to the nerve root); Tr. 462 (March 25, 2015: Plaintiff's back was normal to inspection, but on palpation Plaintiff stated he felt some tenderness at the lumbar spine diffusely as well as paraspinous muscles around the lumber spine; there was no tenderness at Plaintiff's cervical spine or thoracic spine); Tr. 496 (September 3, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back, and his muscle tone and coordination were also normal); Tr. 498 (September 30, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back, though he did have moderate spasm of the superior medial left trapezius); Tr. 440 (November 3, 2015: Plaintiff had tenderness with muscle spasm and some limit on range of motion in his low back, but strength was normal and straight leg raising was negative); Tr. 503 (November 4, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back); Tr. 507 (December 2, 2015: Plaintiff demonstrated normal range of motion, coordination, and muscle tone); Tr. 511 (December 28, 2015: Plaintiff demonstrated normal range of motion, strength, and muscle tone); Tr. 591, 677 (January 26, 2016: imaging showed only mild to moderate findings with no mention of impact to the nerve root); Tr. 798 (February 19, 2016: Plaintiff's range of motion in his lumbar spine was within

ORDER - 12

functional limits); Tr. 678 (April 4, 2016: Plaintiff had no misalignment, asymmetry, crepitation, defects, tenderness, masses, effusions, decreased range of motion, instability, atrophy, abnormal strength or tone in the spine). The ALJ also noted that the record was inconsistent with any definitive radiculopathy. Tr. 25 (citing Tr. 462, 484).

The ALJ concluded that Plaintiff's allegations that he was unable to work due to numbness in his right leg were not corroborated by the record. Tr. 25-26; *see, e.g.,* Tr. 795 (January 29, 2016: nerve conduction and electromagnetic studies of Plaintiff's right leg were incomplete, as the test administrator needed authorization for a three-limb study); Tr. 677, 682 (April 4, 2016: Plaintiff's treating neurologist noted a prolonged latency of the right tibial nerve "CMAP" with decreased conduction velocity, but recommended no treatment beyond Gabapentin). The ALJ observed that there was no further development of this issue, and while Plaintiff was noted as having an antalgic gait at some examinations, most examinations showed a normal gait with full range of motion and strength in all extremities. Tr. 26; *see* Tr. 462-63, 496, 498, 503, 507, 511, 533, 678, 779, 792.

The ALJ found that Plaintiff's allegations that he was unable to work due to numbness in his left arm and both hands which prevented him from picking up small items, gripping items, impacted his ability to lift and carry, and caused him

to drop items, were not corroborated by the record. Tr. 24-27; *see, e.g.,* Tr. 438 (November 3, 2015: during a consultative physical examination, Plaintiff was able to turn a doorknob, tie a pair of shoes, manipulate a button, and pick up a coin with either hand, and his grip strength was full and symmetrical); Tr. 463 (April 2, 2015: examination showed full strength except for bulging of Plaintiff's lateral triceps with a scar over that area, and full range of motion with normal sensory and vasculature); Tr. 533 (October 1, 2015: examination demonstrated full muscle strength in Plaintiff's bilateral upper extremities). The ALJ noted that Plaintiff did not demonstrate positive Tinel's until February 2016 and studies taken that month showed moderate bilateral carpal tunnel syndrome. Tr. 26 (citing Tr. 798, 800). The ALJ also noted that in March 2016, Plaintiff demonstrated full range of motion at the wrists with no tenderness; Tinel's, wrist compression, and Phalen signs were all negative; there was no thenar atrophy and good thenar and interosseous strength; there was full composite gripping; and there were no deformities. Tr. 26-27 (citing Tr. 861-62).

Further, the ALJ found that Plaintiff's allegations that he was unable to work due to mental symptoms, including memory deficiencies and difficulty with concentration and attention, were inconsistent with mental clinical findings. Tr. 25, 28; *see, e.g.,* Tr. 497 (September 30, 2015: cognitive examination within normal limits and oriented times four, depressed mood, flat affect, appropriate

ORDER - 14

insight, passive suicidal ideation); Tr. 503, 507 (November 4, 2015 and December 2, 2015: normal mood and affect, normal behavior, normal judgment and thought content); Tr. 532-33, 540, 678 (September 9, 2015, January 4, 2016, and April 4, 2016: oriented to person, place, and time, behavior was pleasant and cooperative, recent and remote memory was intact, attention span, concentration, language, and fund of knowledge were sufficient, speech was clear in tone, volume, and rate); Tr. 797 (February 5, 2016: normal speech, behavior, judgment, thought content, cognition, and memory, depressed mood, no homicidal or suicidal ideation); Tr. 801-02 (February 19, 2016: normal cognition, depressed mood, appropriate insight, passive suicidal ideation): Tr. 818 (August 3, 2016: normal cognition, depressed mood, appropriate insight, suicidal ideation with plan, although Plaintiff denied any intent to harm himself at that time); Tr. 828 (December 1, 2016: normal cognition, anxious and depressed mood, appropriate insight, passive suicidal ideation with no current plan); Tr. 831 (February 3, 2017: normal cognition, depressed mood, appropriate insight, passive suicidal ideation, Plaintiff has had thoughts of hurting himself but denied any active plan or intent, maintained appropriate eye contact, demonstrated logical thought processes, asked appropriate questions); Tr. 844 (July 3, 2017: normal cognition, depressed and anxious mood, passive suicidal ideation, Plaintiff denied any intent or plan to harm himself at that time, passive homicidal ideation, Plaintiff denied any intent or plan to harm others,

ORDER - 15

although he would get frustrated with his sons, maintained appropriate eye contact, demonstrated logical thought processes, asked appropriate questions); Tr. 852 (August 31, 2017: normal cognition, depressed mood, appropriate insight, suicidal ideation with a plan, thought about harming himself with a knife and stated that he did not want to do this and did not have a plan to harm himself at that time, maintained appropriate eye contact, asked appropriate questions); Tr. 862 (March 16, 2016: oriented to time, place, person, and situation, appropriate mood and affect, normal insight and judgment). The ALJ also indicated that although Plaintiff alleged difficulty with memory and concentration, neither of these concerns were addressed with his provider at the Yakima Valley Farm Worker's Clinic. Tr. 28.

Plaintiff argues that there was a large amount of both physical and mental evidence to support his symptom allegations and the opinions of his providers. ECF No. 14 at 18. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)

(internal quotation marks omitted).  Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of physical or mental impairments alleged by Plaintiff.  Tr. 25-28.  The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with the other identified reasons, *see infra*, to discount Plaintiff's symptom complaints.

### 2.  *Conservative Treatment*

The ALJ found that Plaintiff's conservative treatment was inconsistent with the level of impairment Plaintiff alleged.  Tr. 26-27.  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").  In his opening brief, Plaintiff did not

challenge this reason articulated by the ALJ, thus it is waived. *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Despite Plaintiff's waiver, the Court has reviewed the ALJ's finding. The ALJ observed that although Plaintiff alleged that he was unable to work due to a constant and sharp pain in his lower back and finger numbness that prevented him from picking up small items, gripping items, and lifting and carrying, he was prescribed Gabapentin and presented to "two short stints" in physical therapy for his back pain. Tr. 24-26, 61 (citing Tr. 462, 611-29, 807). The ALJ noted that Plaintiff was prescribed splints for his carpal tunnel syndrome and told he could undergo release surgery when he was ready. Tr. 27, 862. However, the ALJ indicated Plaintiff reported that the splints improved his symptoms and he did not return to pursue surgery. Tr. 27, 807. The ALJ's finding that conservative treatment was inconsistent with Plaintiff's alleged limitations is supported by substantial evidence.

### 3. Minimal Mental Health Treatment

The ALJ found that Plaintiff's minimal treatment for his longstanding depression further indicated that his mental impairment did not cause disabling limitations in his functioning. Tr. 28. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be

considered when evaluating a claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 Fed. App'x 45, *2 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ determined that Plaintiff's lack of treatment for depression detracted from the reliability of his statements about his mental state. Tr. 28. The ALJ noted Plaintiff reported that he was unable to work due to depressive episodes lasting for six days. Tr. 24. However, the ALJ noted Plaintiff was referred to Comprehensive Mental Health, but he only presented to that agency for treatment

on one occasion.  Tr. 28, 718, 750-55.  The ALJ noted that Plaintiff instead chose

to see his provider at Yakima Valley Farm Worker's Clinic, but he received

minimal mental health treatment through that clinic as he only presented

periodically to Phillip Hawley, Ph.D.  Tr. 775.  The ALJ observed that Dr. Hawley

described Plaintiff's visits with him as brief and "focused on functional restoration

rather than diagnosis and therapy."  Tr. 28 (citing Tr. 775).  Moreover, the ALJ

noted that although Plaintiff alleged difficulty with memory and concentration,

neither of these concerns were addressed at his appointments with Dr. Hawley.  Tr.

28; *see* Tr. 775-78, 780-81, 783-85, 791, 801-07, 810-14, 817-19, 821-24, 829-38,

851-54.  Rather, the ALJ observed that Plaintiff's appointments at Yakima Valley

Farm Worker's Clinic appeared merely to meet the Department of Social and

Health Services (DSHS) requirement that he received monthly mental health

treatment.  Tr. 28 (citing Tr. 812, 846).  The ALJ also determined there was no

evidence to suggest that Plaintiff's failure to seek treatment was attributable to his

mental impairment rather than a personal preference.  Rather, the ALJ noted that

Plaintiff presented for regular care of physical complaints without any indication of

difficulty with missed appointments that would be indicative of a problem with

attendance.  Tr. 34.  The ALJ reasonably relied on this evidence in evaluating

Plaintiff's symptom claims.  This was a clear and convincing reason to discredit

Plaintiff's symptom testimony.

ORDER - 20

### 4. Improvement with Treatment

The ALJ found that Plaintiff's headaches, carpal tunnel syndrome, and mental health symptoms appeared to respond to treatment. Tr. 27-28. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti*, 533 F.3d at 1040 (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ noted that Plaintiff testified to frequent headaches that prevented him from working, as they caused blurriness and dizziness. Tr. 24. However, the ALJ found that treatment was effective at reducing Plaintiff's headaches. Tr. 27; *see, e.g.,* Tr. 498-500 (September 30, 2015: Plaintiff was started on Tylenol three tablets, though it was unclear whether this was for headaches or back pain); Tr. 529 (November 2, 2015: Plaintiff tried Topamax, which was titrated up to 100 milligrams); Tr. 538 (January 4, 2016: Plaintiff reported he was doing well on this dose of Topamax until he got sick and took Nyquil and the headaches returned, so his Topamax dose was raised); Tr. 686 (July 18, 2016: after his wife passed away, Plaintiff alleged increased headaches and his Topamax dose was increased to 200

milligrams twice per day, and there was no indication of any further titration of this

medication through the remainder of the record). The ALJ noted that, while

Plaintiff presented to the emergency room in 2017 with headache complaints, those

complaints appeared to be attributable to the fact that he ran out of medication. Tr.

27 (citing Tr. 692-94). The ALJ observed that Plaintiff "remained on the same

cocktail of medications through the remainder of the record, indicating stability."

Tr. 27. Further, the ALJ noted that Plaintiff alleged he experienced blackouts with

his headaches in December 2015, but found this allegation to be inconsistent with

the record as a whole.[3] Tr. 27; *see, e.g.,* Tr. 57, 698 (There was no medical

revocation of Plaintiff's driver's license and he reported that he continued driving

---------------------------

[3] The ALJ stated that Plaintiff reported to his treating clinician that he blacked out

while driving and he was instructed not to drive until released by the neurologist,

but there was no indication that Plaintiff reported this incident to his neurologist.

Tr. 27 (citing Tr. 506-07). The record indicates that Plaintiff did notify his

neurologist of the incident. *See* Tr. 538 (January 4, 2016: treatment notes from

Plaintiff's neurologist at Washington Neurology, Inc., stated, "[Plaintiff] had a

black out episode while driving 1.5 month (sic) ago. [Plaintiff] got blurry vision,

dizziness. Pulled off the road and passed out. When woke up, [Plaintiff] was off

the road by 20ft.").

in September 2017); Tr. 539 (January 4, 2016: more recent clinical notes were negative for syncope).

The ALJ noted that Plaintiff testified to bilateral hand symptoms that prevented him from working, such as finger numbness that prevented him from picking up small items or gripping items and impacted his ability to lift and carry. Tr. 25. However, the ALJ stated that Plaintiff was prescribed splints and told he could undergo release surgery when he was ready. Tr. 27 (citing Tr. 862). Plaintiff reported that the splints improved his symptoms, and he did not return to pursue surgery. Tr. 27 (citing Tr. 807). The ALJ also noted that Plaintiff alleged mental health symptoms that prevented him from working, such as difficulty with memory, concentration, task completion, and interacting with others, and depressive episodes that would last for six days. Tr. 24, 64, 295. However, the ALJ found that despite minimal engagement with mental health treatment, Plaintiff's symptoms appeared to respond to treatment. Tr. 28. The ALJ noted that, as discussed *supra*, mental clinical findings were consistently normal despite a depressed or anxious mood. Tr. 28. On this record, the ALJ reasonably concluded that Plaintiff's headaches, carpal tunnel syndrome, and mental health impairments when treated were not as limiting as Plaintiff claimed. This finding is supported by substantial evidence and was a clear and convincing, and unchallenged, reason to discount Plaintiff's symptom complaints. *See Carmickle v.*

*Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *see also Kim*, 154 F.3d at 1000.

### 5. Daily Activities

The ALJ found Plaintiff's daily activities were inconsistent with the level of impairment Plaintiff alleged. Tr. 26-27. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ noted that Plaintiff testified he had to constantly shift positions and sit on the floor five days per week due to his back pain. Tr. 26, 57-58, 63-64. However, the ALJ observed that Plaintiff went to the recycling center to gather scrap material to build things, cared for his grandchildren at times, moved

apartments, completed some "odd jobs" for a friend, and walked his dogs. Tr. 25-26 (citing Tr. 820, 827, 834, 853-54). The ALJ also cited Plaintiff's testimony that his carpal tunnel syndrome caused him to be unable to work, and he was unable to even hold onto a plastic soda bottle without dropping it. Tr. 27, 60-61. The ALJ then noted that in November 2015, Plaintiff reported he enjoyed computer games, drawing, and light yard work. Tr. 27 (citing Tr. 437, 502). The ALJ noted that after he was prescribed splints, Plaintiff reported that he was excited about working with his hands, including going to the recycling center to scrap material and build his shed. Tr. 27 (citing Tr. 820). The ALJ referenced Plaintiff's testimony that he spent his time coloring to relieve stress using adult coloring books and pencils. Tr. 25, 27, 54. The ALJ's finding that Plaintiff's daily activities were inconsistent with his specific alleged limitations is supported by substantial evidence.

### 6. *Situational Stressors*

The ALJ found that Plaintiff's symptom testimony regarding his mental impairments was attributable to situational stressors. Tr. 28. An ALJ may reasonably find a claimant's symptom testimony less credible where the evidence "squarely support[s]" a finding that the claimant's impairments are attributable to situational stressors rather than impairments. *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) ("Plaintiff testified that she would likely be able to maintain full-time employment but for the

'overwhelming' stress caused by caring for her family members"). However, "because mental health conditions may presumably *cause* strained personal relations or other life stressors, the Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously." *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (emphasis in original).

The ALJ identified issues with Plaintiff's unstable living situation, the disability benefits process, and stress within his family as situational stressors. Tr. 28; *see, e.g.,* Tr. 775 (July 30, 2015: treatment notes report that Plaintiff had difficulty sleeping and frequent headaches "that are worsened due to stress in his life"); Tr. 801-02 (February 19, 2016: Dr. Hawley reported that Plaintiff's mother had been in and out of the hospital and "this has made things more stressful for him," Plaintiff was worried about his mother and resulting financial changes such as his mother's house being sold which was difficult for Plaintiff because he was living on her property and had to find a new place to live; Dr. Hawley noted, "with current stressors, he reports a more depressed mood over the last several weeks"); Tr. 809 (June 1, 2016: treating provider noted that Plaintiff's wife had passed away one week earlier); Tr. 828 (December 1, 2016: psychologist Courtney Valentine, Ph.D., reported that Plaintiff had "depression, anxiety, grief and chronic pain that has worsened due to social and financial stressors"); Tr. 833 (February 22, 2017:

treating provider noted that Plaintiff was "feeling down/depressed and continues to have a lot of hardship going on in his life"); Tr. 646 (April 25, 2017: psychological examiner noted that Plaintiff had "a number of negative events" occur in the prior 15 months that exacerbated his symptoms); Tr. 836 (May 25, 2017: Plaintiff reported to Dr. Hawley that he was being evicted from his apartment and had to be out by the next day, his daughter had found out months ago but he had only recently found out, and Dr. Hawley noted "due to his ongoing stress difficulty from his family and today being the anniversary of his wife's death," Plaintiff was "done with the area"); Tr. 843 (June 19, 2017: Dr. Valentine reported that Plaintiff "continues to have increased social stressors that negatively impact his physical and emotional health," and she discussed Plaintiff living in a camper in the woods without running water with two of his sons with whom he did not get along, having no transportation or other options for housing, having very little income and difficulty with food security, and she noted that Plaintiff had been having increased anxiety and agoraphobia symptoms over the last few months "which he thinks are related to increased stress and his current housing situation"); Tr. 852 (August 31, 2017: Dr. Hawley noted that Plaintiff's severe depression was "worsened by [his] poverty/homelessness and multiple ongoing stressors"). The ALJ found this evidence to be consistent with Plaintiff's opinion attributing "most of his stress to the process of disability and from his family." Tr. 28 (citing Tr. 784). Plaintiff's

increased stress from the death of his wife and his mother were not caused by Plaintiff's impairments. However, Plaintiff's other stressors from the disability benefits process, homelessness and other unstable living environments, and issues with his family and stepchildren are less clearly separable from Plaintiff's mental impairments. Unlike prior cases in this district, where the record clearly contained evidence that the claimant would have been capable of working but for the presence of a specific situational stressor, here Plaintiff's impairments and situational stressors are more complex and intertwined. *See Wright*, 2014 WL 3729142, at *5. This finding is not supported by substantial evidence. However, this error is harmless because the ALJ identified numerous specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

### 7. *Ability to Work with Impairments*

The ALJ found that Plaintiff's allegations were inconsistent with his past ability to work with his impairments. Tr. 25, 27, 28. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling). The ALJ noted that Plaintiff testified

ORDER - 28

to a long history of back impairment that resulted in his discharge from the U.S. Army in 1980, but he also testified that he was able to work for 35 years after his discharge.  Tr. 25; *see* Tr. 58 (Plaintiff testified that he was diagnosed with bilateral spondylosis of the fifth lumbar vertebrae in 1980 causing him to be discharged from service).  The ALJ found that Plaintiff alleged he had experienced headaches since the 1990s, but he was able to work for many years despite his headaches.  Tr. 27; *see, e.g.,* Tr. 310 (August 27, 2015: Plaintiff reported that his headaches first began in 1990 and were the result of a car accident); Tr. 327 (January 18, 2016: Plaintiff reported that he was unaware of the date his headaches first began, but he had had them for years and they could have been caused by a car accident); Tr. 352 (Plaintiff reported that he was prescribed Amitriptyline for headaches and sleep in the early 2000s, and he reported that his headaches got worse); Tr. 353 (describing his work as a truck driver, Plaintiff stated, "I was having severe headaches but was still handling the driving").  The ALJ indicated that Plaintiff reported a 20-year history of depression, but he "was able to work for almost two decade despite his mental health symptoms."  Tr. 28, 750.  The ALJ reasonably concluded that Plaintiff's ability to work with his back impairment that resulted in a discharge from the U.S. Army in 1980, headaches that he had experienced since the 1990s, and a 20-year history of depression, indicated that Plaintiff's impairments were not as severe as he alleged.  Tr. 25, 27-28.  This

finding is supported by substantial evidence and was a clear and convincing, and unchallenged, reason to discount Plaintiff's symptom complaints.  *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

## B.     Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of William Drenguis, M.D., Ian Wilde, PA-C, David A. Fine, PA-C, Tony Lee, M.D., Kyle Prescott, P.T., D.P.T., Rebekah A. Cline, Psy.D., Brent Packer, M.D., and M. Liddell, M.D.  ECF No. 14 at 5-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[4] However, an ALJ is required to

_____

[4] For claims filed prior to March 27, 2017, the definition of an acceptable medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, are located at 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

consider evidence from non-acceptable medical sources.  *Sprague v. Bowen*, 812

F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

"Other sources" include nurse practitioners, physicians' assistants, therapists,

teachers, social workers, spouses and other non-medical sources.  20 C.F.R. §§

404.1513(d), 416.913(d) (2013).  An ALJ may reject the opinion of a non-

acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763

F.3d at 1161.

### 1. Dr. Drenguis

On November 3, 2015, examining physician, William Drenguis, M.D.,

conducted a physical evaluation of Plaintiff.  Tr. 436-42.  Dr. Drenguis found

limited range of motion in Plaintiff's neck and back, tenderness to percussion of

the lumbar spine, bilateral paravertebral muscle spasms, normal muscle strength,

and negative straight leg raise testing.  Tr. 439-40.  There were no radicular

findings.  Tr. 440.  He found the left Tinel's test was positive and there was

decreased sensation to pinprick and light touch in a left median nerve distribution.

Tr. 439-40.  During his examination, Plaintiff was able to make a full fist with both

hands, touch his thumb to the tip of each finger, turn a doorknob, tie a pair of

shoes, manipulate a button, and pick up a coin with either hand.  Tr. 438.  Plaintiff

had full grip strength.  Tr. 438.  Dr. Drenguis opined that Plaintiff could stand/walk

for at least two hours and sit for about six hours in an eight-hour workday.  Tr.

440.  Dr. Drenguis opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently.  Tr. 441.  He also opined that Plaintiff could occasionally climb steps, stairs, ladders, scaffolds, and ropes, and occasionally stoop, crouch, kneel, and crawl.  Tr. 441.  He opined that Plaintiff could frequently reach overhead, reach forward, handle, finger, and feel with his dominant right upper extremity.  Tr. 441.  He opined that Plaintiff could frequently reach overhead and forward with his left upper extremity, but he could only occasionally handle, finger, and feel with his left upper extremity.  Tr. 441.

The ALJ gave this opinion some weight and disregarded Dr. Drenguis' opined standing, walking, and manipulative limitations.  Tr. 29.  Because Dr. Drenguis' opinion was contradicted by the nonexamining opinion of Robert Bernardez-Fu, M.D., Tr. 81-93, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Drenguis' opinion.[5]  *Bayliss*, 427 F.3d at 1216.

_____

[5] Dr. Bernardez-Fu opined that Plaintiff could stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday.  Tr. 87.  He assigned no limitations to Plaintiff's ability to reach, handle, or feel, and he limited Plaintiff to frequent fingering with his left hand.  Tr. 88.

a.     Inconsistent with the Medical Record

The ALJ found that Dr. Drenguis' opinion was inconsistent with the medical evidence.  Tr. 29.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Here, the ALJ determined that the record did not support Dr. Drenguis' opined limitation that Plaintiff could only occasionally handle and finger with his left upper extremity, and that Plaintiff had limitations on feeling with both upper extremities.  Tr. 29; *see, e.g.,* Tr. 438 (Dr. Drenguis' examination showed full and symmetrical grip strength); Tr. 440 (Dr. Drenguis found that Plaintiff's sensation was decreased in a left median nerve distribution and Tinel's was positive on the left, but Plaintiff was able to turn a doorknob, tie a pair of shoes, manipulate a button, and pick up a coin with either hand).

The ALJ also found that Dr. Drenguis' opinion as to Plaintiff's standing and walking limitations was inconsistent with the medical record.  Tr 29.  The ALJ cited inconsistencies between Dr. Drenguis' opinion and his own examination results.  Tr. 29; *see, e.g.,* Tr. 439-40 (Dr. Drenguis' examination of Plaintiff

showed some limits on range of motion of the lumbar spine, but straight leg raise testing was negative and he had full strength in his lower extremities); Tr. 439 (Dr. Drenguis' examination showed that Plaintiff's station was stable, his gait was normal, he could walk on his heels and toes, and he could tandem walk). The ALJ also noted that clinical examinations in the record were primarily negative. Tr. 29; *see, e.g.,* Tr. 532, 636 (March 19, 2015: imaging of Plaintiff's lumbar spine showed only mild to moderate findings with no mention of impact to the nerve root); Tr. 462 (March 25, 2015: Plaintiff's back was normal to inspection, but on palpation Plaintiff stated he felt some tenderness at the lumbar spine diffusely as well as paraspinous muscles around the lumber spine; there was no tenderness at Plaintiff's cervical spine or thoracic spine); Tr. 496 (September 3, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back, and his muscle tone and coordination were also normal); Tr. 498 (September 30, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back, though he did have moderate spasm of the superior medial left trapezius); Tr. 503 (November 4, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back); Tr. 507 (December 2, 2015: Plaintiff demonstrated normal range of motion, coordination, and muscle tone); Tr. 511 (December 28, 2015: Plaintiff demonstrated normal range of motion, strength, and muscle tone); Tr. 591, 677 (January 26, 2016: imaging of Plaintiff's lumbar spine showed only

ORDER - 35

mild to moderate findings with no mention of impact to the nerve root); Tr. 798

(February 19, 2016: Plaintiff's range of motion in his lumbar spine was within

functional limits); Tr. 678 (April 4, 2016: Plaintiff had no misalignment,

asymmetry, crepitation, defects, tenderness, masses, effusions, decreased range of

motion, instability, atrophy, abnormal strength, or abnormal tone in the spine).

Additionally, while Plaintiff testified that he sat on the floor five days per week

because he was unable to move, Tr. 63-64, the ALJ found that the medical

evidence did not support a finding of muscle atrophy. Tr. 29. These

inconsistencies with the medical evidence provided a specific and legitimate

reason to discredit Dr. Drenguis' opinion. Plaintiff argues that the ALJ failed to

give proper deference to Plaintiff's physician. ECF No. 14 at 6. The Court may

not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's

interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the

evidence is susceptible to more than one rational interpretation" the court will not

reverse the ALJ's decision). The ALJ reasonably concluded that Dr. Drenguis'

opined limitations were inconsistent with the medical evidence. This finding is

supported by substantial evidence.

      b.    Failure to Assess a Specific Functional Limitation

      The ALJ discounted Dr. Drenguis' opinion as to Plaintiff's standing and

walking limitations finding "Dr. Drenguis did not render an opinion regarding the

most [Plaintiff] could do," when he opined that Plaintiff could stand/walk for "at least" two hours. Tr. 29. An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Further, an RFC assessment is intended to reflect the most that a claimant is able to do, not the least a claimant is able to do or the conditions under which a claimant would function best. *See* SSR 96-8p ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*") (emphases in original). Here, Dr. Drenguis provided no further explanation as to the limitations he assigned to Plaintiff's ability to stand or walk. The ALJ reasonably discredited this finding because it did not show how Plaintiff's symptoms translated into a specific functional deficit. Tr. 29. This was a specific and legitimate reason to discredit Dr. Drenguis' opinion.

### 2. Mr. Wilde

On April 8, 2015, Plaintiff's treating provider, Ian Wilde, PA-C, completed an "Attending Physician's Statement." Tr. 467-68. He opined that Plaintiff could lift up to 10 pounds, push/pull up to 20 pounds, continuously reach, frequently kneel, and occasionally bend, climb, squat, and crawl. Tr. 468. Mr. Wilde opined that Plaintiff should "avoid dangerous work" until he completed an evaluation with physical therapy and/or neurology. Tr. 468. Two months later, on June 9, 2015,

Mr. Wilde completed a DSHS physical evaluation form and limited Plaintiff to sedentary work. Tr. 426-30. In his June evaluation, Mr. Wilde noted that he had reviewed an x-ray of Plaintiff's lumbar spine. Tr. 427. He reported that Plaintiff experienced back pain, dizziness, and headaches. Tr. 426. Mr. Wilde opined that Plaintiff's low back pain caused marked limitations in his ability to sit, stand, walk, lift, carry, handle, pull, stoop, and crouch. Tr. 427. He opined that Plaintiff's headaches caused moderate limitations in his ability to sit, stand, lift, carry, push, pull, stoop, crouch, and reach. Tr. 427. The ALJ assigned minimal weight to Mr. Wilde's June 2015 opinion. Tr. 30. Because Mr. Wilde was an "other source," the ALJ was required to provide germane reasons to discount his opinion.[6] *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ discounted Mr. Wilde's opinion because it appeared to rely heavily on Plaintiff's subjective pain complaints and limitations. Tr. 30. A physician's opinion may be rejected if it is based on a claimant's properly discounted complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605. However, when an opinion is not more heavily based on a patient's discounted self-reports than on clinical observations,

_____

[6] As a physician's assistant, Mr. Wilde is considered an "other source" under 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

ORDER - 38

there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200. Plaintiff argues that Mr. Wilde referred to an x-ray of Plaintiff's lumbar spine to explain his opinion that he was limited to sedentary work and thus, his opinion was based on objective findings. ECF No. 14 at 7 (citing Tr. 477-78). However, the referenced x-ray showed only mild to moderate degeneration. Tr. 476, 769 (June 9, 2015: Mr. Wilde reported in treatment notes that x-rays of Plaintiff's lumbar spine showed mild to moderate degenerative vertebral osteophytes, 2 mm retrolisthesis at L1-2, L2-3, and L3-4, 3 mm retrolisthesis at L4-5, and 4 mm of anterior listhesis along L5 pars defects). The ALJ noted that just two months after Mr. Wilde's first opinion regarding Plaintiff's functional limitations, he limited Plaintiff to sedentary work without any explanation as to changes in Plaintiff's condition that would justify his decreased functionality. Tr. 30. The ALJ also found that Mr. Wilde's treatment notes included Plaintiff's subjective reports of his inability to stand or sit for any length of time, but no objective testing to corroborate these allegations. Tr. 30; *see, e.g.,* Tr. 768-69 (June 9, 2015: Mr. Wilde noted that Plaintiff continued to complain of severe back pain that limited his ability to stand or sit for any length of time, or to move about, Plaintiff reported that he experienced headaches that caused him to become dizzy, Plaintiff had "a lifelong history of spondylolisthesis and back pain," and he was discharged from the Army due to his inability to stand or sit for any

length of time); Tr. 772 (July 30, 2015: Mr. Wilde noted that Plaintiff reported constant headaches that were occasionally a 10/10 on the pain scale); Tr. 759 (March 19, 2015: on examination, Plaintiff's back was normal to inspection, and he had full range of motion of all his extremities and strength was 5/5 bilaterally, but on palpation he stated he felt some tenderness at the lumbar spine diffusely as well as paraspinous muscles around the lumbar spine); Tr. 771 (July 10, 2015: Mr. Wilde observed that Plaintiff had a normal gait).  As discussed *supra*, Plaintiff's symptom complaints were properly discounted and Plaintiff failed to establish that the medical evidence of record, including the x-ray of his spine and Mr. Wilde's contemporaneous treatment notes, supported Mr. Wilde's opinion that Plaintiff was limited to sedentary work.  This was a germane reason for discounting Mr. Wilde's opinion.

### 3. Mr. Fine

On June 8, 2016, David A. Fine, PA-C, completed a residual functional capacity questionnaire about Plaintiff's lumbar spine.  Tr. 595-99.  Mr. Fine diagnosed osteoarthritis of the spine with radiculopathy, neuropathy of upper extremities, carpal tunnel, tarsal tunnel, anxiety, and depression.  Tr. 595.  Mr. Fine found that Plaintiff had a decreased range of motion, specifically decreased lumbar flexion/extension, rotation, and lateral flexion/extension.  Tr. 596.  He also found abnormal gait, sensory loss, reflex changes, tenderness, muscle spasm, muscle

weakness, and impaired sleep. Tr. 596. He noted that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. Tr. 596. Mr. Fine opined that Plaintiff would constantly experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks. Tr. 596. He opined that Plaintiff could only walk one to three city blocks without rest or severe pain, could sit or stand for only 15 minutes at one time, and could sit and stand/walk less than two hours in an eight-hour workday. Tr. 597. He opined that Plaintiff needed to walk for 10 minutes every 15 minutes, shift positions at will, take a 10 to 15 minute break once per hour, and use a cane, and Plaintiff had significant limitations in doing repetitive reaching, handling, or fingering, had impairments that were likely to produce both good and bad days, and would be absent four or more days per month as a result of his impairments. Tr. 597-98. The ALJ gave Mr. Fine's opinion minimal weight. Tr. 30. Because Mr. Fine was an "other source," the ALJ was required to provide germane reasons to discount his opinion.[7] *Dodrill*, 12 F.3d at 918.

---

[7] As a physician's assistant, Mr. Fine is considered an "other source" under 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

a.    Inconsistent with the Medical Record

The ALJ found that Mr. Fine's opinion was inconsistent with the medical evidence. Tr. 30. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875. Here, the ALJ found that Mr. Fine's opined limitations far exceeded Plaintiff's examination findings, which generally noted normal range of motion, strength, and gait. Tr. 30; *see, e.g.,* Tr. 496 (September 3, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back, and his muscle tone and coordination were also normal); Tr. 498 (September 30, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back, though he did have moderate spasm of the superior medial left trapezius); Tr. 440 (November 3, 2015: Plaintiff had tenderness with muscle spasm and some limit on range of motion in his low back, but strength was normal and straight leg raising was negative); Tr. 503 (November 4, 2015: Plaintiff had normal range of motion and exhibited no tenderness in his low back); Tr. 507 (December 2, 2015: Plaintiff demonstrated normal range of motion, coordination, and muscle tone); Tr. 511 (December 28, 2015: Plaintiff

ORDER - 42

demonstrated normal range of motion, strength, and muscle tone); Tr. 798

(February 19, 2016: Plaintiff's range of motion in his lumbar spine was within

functional limits); Tr. 678 (April 4, 2016: Plaintiff had no misalignment,

asymmetry, crepitation, defects, tenderness, masses, effusions, decreased range of

motion, instability, atrophy, abnormal strength or tone in the spine). Further, the

ALJ noted that Mr. Fine's clinical notes included no upper extremity deficiencies

upon examination, yet he assigned limitations to Plaintiff's ability to reach, handle,

and finger. Tr. 30, 598. Plaintiff asserts that Mr. Fine's objective findings such as

decreased range of motion, abnormal gait, sensory loss, reflex changes, tenderness,

muscle spasm, muscle weakness, and impaired sleep, were consistent with his

opined limitations. ECF No. 14 at 8 (citing Tr. 596). It is the ALJ's responsibility

to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. When

resolving conflicts in the medical evidence, an ALJ is not obligated to credit

medical opinions that are unsupported by the medical source's own data.

*Tommasetti*, 533 F.3d at 1041. The ALJ found that Mr. Fine's opinion was

inconsistent with the medical record and his own treatment notes. This was a

germane reason to discount Mr. Fine's opinion.

### b. Inadequate Explanation

The ALJ discounted Mr. Fine's assessment because he failed to provide an

explanation for his opined limitations. Tr. 30. The Social Security regulations

ORDER - 43

"give more weight to opinions that are explained than to those that are not."

*Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory and

inadequately supported by clinical findings." *Bray*, 554 at 1228. As discussed

*supra*, the ALJ determined that Plaintiff's examination results were generally

normal throughout the record and that Mr. Fine's treatment notes failed to support

his opined limitations. Tr. 30. Specifically, the ALJ noted that the examination

portion of Mr. Fine's clinical notes from a June 1, 2016 visit included only a

transcription of Plaintiff's complaints of back pain, arthralgias, gait problem, and

sleep disturbance. Tr. 30 (citing Tr. 809). The ALJ also found that Mr. Fine did

not perform testing and he primarily deferred to the treatment plan of Plaintiff's

neurologist, who had recommended only physical therapy and Gabapentin to treat

his back pain. Tr. 30, 810. Moreover, the ALJ noted that Mr. Fine did not treat

Plaintiff's psychological complaints, but instead deferred to Dr. Hawley. Tr. 30,

810. The ALJ reasonably discredited Mr. Fine's assessed limitations as not

sufficiently explained. Tr. 30. This was a germane reason to discredit Mr. Fine's

opinion.

   *4. Dr. Lee*

   On August 2, 2018, Plaintiff's treating neurologist, Tony Lee, M.D.,

completed a residual functional capacity questionnaire about Plaintiff's lumbar

spine. Tr. 605-09. Dr. Lee specifically stated that he did not assess Plaintiff's functional limitations. Tr. 609. He identified Plaintiff's symptoms as headaches, insomnia, and back pain, and noted sensory loss, reflex changes, and impaired sleep as objective signs of Plaintiff's pain. Tr. 605-06. He noted that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. Tr. 606. He opined that Plaintiff would frequently experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks. Tr. 606.

The ALJ gave Dr. Lee's opinion little weight. Tr. 31. Because Dr. Lee's opinion was contradicted by the nonexamining opinion of John F. Robinson, Ph.D., Tr. 89-91, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Lee's opinion.[8] *Bayliss*, 427 F.3d at 1216.

The ALJ found that Dr. Lee's opinion was a recitation of Plaintiff's symptom allegations. Tr. 31. A physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605.

_____

[8] Dr. Robinson opined that Plaintiff's attention and concentration "may be disrupted" due to his symptoms, but he was able to remember short and simple instructions. Tr. 90.

ORDER - 45

However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200. As discussed *supra*, the ALJ reasonably discredited Plaintiff's symptom complaints. Moreover, Dr. Lee explicitly stated that Plaintiff was not assessed for functional limitations, yet he opined that Plaintiff had significant limitations. Tr. 31, 606, 609. Any examination findings were minimal. *See, e.g.,* Tr. 674, 696 (February 9, 2016 and October 3, 2017: Dr. Lee noted Plaintiff's mental status examination showed Plaintiff's recent and remote memory were intact, and his attention span, concentration, language, and fund of knowledge were sufficient); Tr. 678, 684, 688, 692 (April 4, 2016, July 18, 2016, October 5, 2016, April 3, 2017: Dr. Lee noted Plaintiff's mental status examination showed his attention span, concentration, language, and fund of knowledge were sufficient). In the absence of supportive objective findings, the ALJ reasonably concluded that Dr. Lee's opinion was based on Plaintiff's self-reports. This was a specific and legitimate reason, supported by substantial evidence, to discount Dr. Lee's opinion.

### 5. Mr. Prescott

On July 9, 2016, Plaintiff's physical therapist, Kyle Prescott, P.T., D.P.T., completed a residual functional capacity questionnaire about Plaintiff's lumbar spine. Tr. 600-04. Mr. Prescott opined that Plaintiff could sit for less than two

hours in an eight-hour workday and he could stand/walk for less than two hours in an eight-hour workday. Tr. 602. Mr. Prescott opined that approximately every thirty minutes during an eight-hour workday, Plaintiff would need to walk for five minutes. Tr. 602. He also noted that Plaintiff would frequently need to take unscheduled breaks lasting around 10 to 20 minutes. Tr. 602. He opined that Plaintiff could occasionally lift and carry 20 pounds, occasionally twist, stoop, and bend, and frequently crouch, squat, and climb ladders and stairs. Tr. 603. He determined that Plaintiff would experience frequent deficits in attention and concentration needed to perform even simple work tasks, and that he had difficulty concentrating, staying on task with two to three steps involved, and communicating, especially when multiple things or people were involved. Tr. 601, 604. Mr. Prescott concluded that Plaintiff would be absent from work more than four days per month. Tr. 603. The ALJ gave Mr. Prescott's opinion minimal weight. Tr. 31. Because Mr. Prescott was an "other source," the ALJ was required to provide germane reasons to discount his opinion.[9] *Dodrill*, 12 F.3d at 918.

---

[9] As a physical therapist, Mr. Prescott is considered an "other source" under 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

a.    Inconsistent with the Medical Record

The ALJ found that Mr. Prescott's opinion was inconsistent with the medical

evidence.  Tr. 31.  Relevant factors to evaluating any medical opinion include the

amount of relevant evidence that supports the opinion, the quality of the

explanation provided in the opinion, and the consistency of the medical opinion

with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.

Moreover, a physician's opinion may be rejected if it is unsupported by the

physician's treatment notes.  *See Connett*, 340 F.3d at 875.  Here, the ALJ

determined that the record did not support Mr. Prescott's opined limitations that

Plaintiff could not sustain a total of even four hours of standing, walking, and

sitting, as well as his opinion that Plaintiff would have frequent deficits in

concentration and miss more than four days of work per month.  Tr. 31; *see, e.g.,*

Tr. 678, 684, 688, 692, 697 (upon examination by Dr. Lee, Plaintiff exhibited

normal range of motion, no instability, normal strength and tone, and normal and

appropriate gait, stance, and swing phase).  Further, the ALJ noted that Mr.

Prescott's own clinical notes failed to explain the extreme functional limitations,

but rather, were indicative of improvement.  Tr. 31; *see, e.g.,* Tr. 670 (Mr.

Prescott's clinical notes indicated bilateral hip abduction was 4+/5, which he

characterized in his notes as possible slight weakness); Tr. 662, 664 (Mr. Prescott

reported that Plaintiff's response to treatment included improved coordination,

ORDER - 48

endurance, and posture, and that Plaintiff believed his pain was decreasing and was at the lowest it had been recently). This was a germane reason to discount Mr. Prescott's opinion.

### b. Relied on Self-Reports

The ALJ found that Mr. Prescott relied heavily on Plaintiff's allegations. Tr. 31. A physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200. As discussed *supra*, the ALJ reasonably discredited Plaintiff's symptom complaints. Further, as already noted, any examination findings by Mr. Prescott were minimal. In the absence of supportive objective findings, the ALJ reasonably concluded that Mr. Prescott's opinion was based on Plaintiff's self-reports. This was a germane reason to discount Mr. Prescott's opinion.

### 6. *Dr. Cline – June 2015 Opinion*

On June 6, 2015, Rebekah A. Cline, Psy.D., completed a DSHS form evaluating Plaintiff and found no more than moderate limitations in any functional area. Tr. 431-35. She diagnosed Plaintiff with major depressive disorder,

ORDER - 49

recurrent, moderate. Tr. 433. Dr. Cline opined that Plaintiff's limitations would

last for six to nine months. Tr. 434. On mental status examination, Plaintiff's

orientation and fund of knowledge were found to be within normal limits, his

memory, concentration, and abstract thought were both within and not within

normal limits, and his thought process and content, and perception were not within

normal limits. Tr. 435.

The ALJ assigned some weight to Dr. Cline's June 2015 opinion. Tr. 33.

Because Dr. Cline's opinion was contradicted by the treating opinion of Dr. Lee,

Tr. 605-09, the ALJ was required to provide specific and legitimate reasons for

discounting Dr. Cline's opinion.[10] *Bayliss*, 427 F.3d at 1216.

       a.     Inadequate Explanation

The ALJ discounted Dr. Cline's assessment because she failed to provide an

explanation for her opined limitations. Tr. 33. The Social Security regulations

"give more weight to opinions that are explained than to those that are not."

*Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory and

---

[10] Dr. Lee opined that Plaintiff would frequently experience pain or other

symptoms severe enough to interfere with attention and concentration needed to

perform even simple work tasks. Tr. 606.

ORDER - 50

inadequately supported by clinical findings." *Bray*, 554 at 1228. The ALJ noted

that Dr. Cline failed to correlate any of her mental status examination findings to

her opined limitations. Tr. 33. Although the mental status examination

administered by Dr. Cline demonstrated that Plaintiff's orientation and fund of

knowledge were within normal limits, and his memory, concentration, and abstract

thought were checked as mixed results, she assessed moderate limitations in six of

the thirteen functional categories. Tr. 433-35. The ALJ reasonably discredited Dr.

Cline's assessed limitations as not sufficiently explained. Tr. 33. This was a

specific and legitimate reason to discredit her opinion.

### b.     Did Not Review the Record

The ALJ discounted Dr. Cline's opinion because she did not have the

opportunity to review the record. Tr. 33. The extent to which a medical source is

"familiar with the other information in [the claimant's] case record" is relevant in

assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§

404.1527(c)(6), 416.927(c)(6). Dr. Cline indicated on the DSHS form that she did

not review any records prior to issuing her opinion. Tr. 431. This was a specific

and legitimate reason to discredit Dr. Cline's opinion.

### c.     Opinion Sought for Purpose of Supporting Claim for Disability

The ALJ discounted Dr. Cline's opinion because it appeared to have been

made for the purpose of qualifying Plaintiff for State medical and disability

benefits. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner. *Lester*, 81 F.3d at 832 (citing *Ratto v. Sec'y, Dept. of Health and Human Servs.*, 839 F. Supp. 1415, 1426 (D. Or. 1993)). An ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Id.* (citing *Ratto*, 839 F. Supp. at 1426). However, the Secretary "may introduce evidence of actual improprieties." *Id.* (citing *Ratto*, 839 F. Supp. at 1426). Here, the ALJ did not cite to any evidence of improprieties. Accordingly, this was not a specific and legitimate reason to discredit Dr. Cline's opinion. However, because the ALJ provided other specific and legitimate reasons to reject Dr. Cline's opinion that are supported by substantial evidence, this error is harmless. *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"). Plaintiff is not entitled to relief on these grounds.

### 7. Dr. Cline – April 2017 Opinion

On April 18, 2017, Dr. Cline completed a second DSHS form evaluating Plaintiff. Tr. 645-49. She diagnosed major depressive disorder, recurrent, severe with psychotic features, and found marked limitations in Plaintiff's ability to

communicate and perform effectively in a work setting and complete a normal workday and work week without interruptions from psychologically based symptoms. Tr. 647-48. Dr. Cline opined that Plaintiff's limitations would last for twelve months. Tr. 648. On mental status examination, Plaintiff's orientation and fund of knowledge were again found to be within normal limits, as was his memory, concentration, and insight and judgment. Tr. 649. Plaintiff's abstract thought was both within and not within normal limits, and his thought process and content, and perception were not within normal limits. Tr. 649.

The ALJ assigned minimal weight to Dr. Cline's April 2017 opinion. Tr. 33. Because Dr. Cline's 2017 opinion was contradicted by the nonexamining opinion of Dr. Robinson, Tr. 89-91, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Cline's opinion.[11] *Bayliss*, 427 F.3d at 1216.

      a.     Inadequate Explanation

The ALJ discounted Dr. Cline's assessment because she failed to provide an explanation for her opined limitations. Tr. 33. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any

---

[11] Dr. Robinson opined that Plaintiff had no more than moderate limitations in his ability to function. Tr. 89-91.

physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. The ALJ observed that although Dr. Cline found marked limitations in Plaintiff's ability to communicate and sustain a full work schedule, she did not correlate any of the mental status examination findings to the checked limitations in the evaluation form. Tr. 33 (citing Tr. 648-49). Rather, the mental status examination administered by Dr. Cline in 2017 showed more results within normal limits compared to the mental status examination administered by Dr. Cline in 2015. Tr. 435, 649. Dr. Cline failed to explain this inconsistency in her opinion. The ALJ reasonably discredited Dr. Cline's assessed limitations as not sufficiently explained. Tr. 33. This was a specific and legitimate reason to discredit her opinion.

        b.     Internal Inconsistency

      The ALJ discredited Dr. Cline's opinion because it was inconsistent with her examination findings and notes. Tr. 33. A physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875. As discussed *supra*, Dr. Cline failed to correlate her mental status examination results to her assessed limitations, or to explain her reasons for assigning more severe limitations in her 2017 opinion than her 2015 opinion despite more findings within normal limits in the 2017 mental status examination. Further, Dr. Cline

administered the Rey test, which she noted indicated an average level of effort and cooperation but represented a significant deterioration since Plaintiff's last assessment. Tr. 33 (citing Tr. 646). She noted that Plaintiff reported "a number of negative events" in the last 15 months that had exacerbated his symptoms, but she did not address Plaintiff's functioning outside of the temporary stressors. Tr. 33 (citing Tr. 646). The ALJ reasonably discredited Dr. Cline's assessed limitations due to internal inconsistencies. Tr. 33. This was a specific and legitimate reason to discredit her opinion.

### 8. Dr. Packer

On June 20, 2015, Brent Packer, M.D., reviewed Dr. Cline's June 2015 opinion and concurred with her conclusion on a DSHS form entitled "Review of Medical Evidence." Tr. 644. The ALJ gave Dr. Packer's opinion little weight. Tr. 33. The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

The ALJ discredited Dr. Packer's opinion because he relied on Dr. Cline's discredited opinion. Tr. 33. An ALJ may reject an opinion that is based heavily on another physician's properly discredited opinion. *Paulson v. Astrue*, 368 Fed. App'x 758, 760 (9th Cir. 2010) (unpublished). The ALJ observed that Dr. Packer did not examine Plaintiff and concurred with Dr. Cline's conclusions. Tr. 33

ORDER - 55

(citing Tr. 644). By citing to Dr. Cline's properly discounted opinion, the ALJ

referenced specific evidence in the medical record to also discount Dr. Packer's

opinion. This finding is supported by substantial evidence.

*9. Dr. Liddell*

On March 5, 2016, Plaintiff was examined by consultative mental evaluator,

M. Liddell, M.D. Tr. 541-45. Dr. Liddell diagnosed Plaintiff with major

depressive disorder, somatic symptom disorder, polysubstance use disorder in

sustained full remission, major neurocognitive disorder secondary to traumatic

brain injury, and cluster B traits. Tr. 545. He opined that Plaintiff's psychiatric

disorders would moderately impair his ability to perform simple and repetitive

tasks, perform detailed and complex tasks, manage his own funds in his best

interest, maintain regular workday/workweek attendance in the workplace,

complete a normal workday/workweek without interruptions, and manage the

usual stress encountered in the workplace. Tr. 545. He also opined that Plaintiff

would have mild limitations in his ability to accept instructions from supervisors

and interact with coworkers and the public. Tr. 545.

The ALJ gave Dr. Liddell's opinion little weight. Tr. 34. Because Dr.

Liddell's opinion was contradicted by the nonexamining opinion of Dr. Robinson,

Tr. 89-91, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Liddell's opinion.[12]  *Bayliss*, 427 F.3d at 1216.

        a.     Inconsistent with the Medical Record

The ALJ found that Dr. Liddell's opinion was inconsistent with the medical evidence.  Tr. 34.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *See Connett*, 340 F.3d at 875.  Here, the ALJ determined that the record did not support Dr. Liddell's opined limitations, including Dr. Liddell's own clinical notes.  Tr. 34; *see, e.g.,* Tr. 541 (Dr. Liddell noted that Plaintiff was early to his appointment and observed Plaintiff completing the evaluation questionnaire without any difficulty while interacting with the secretary without any odd behaviors); Tr. 544 (upon examination, Plaintiff was fully oriented and able to recite three digits forward and in reverse, recall 5/5 words immediately and 4/5 after five minutes, and three correct serial seven

_____

[12] Dr. Robinson opined that Plaintiff was not significantly limited in his ability to understand and remember very short and simple instructions.  Tr. 90.

ORDER - 57

subtractions of five); Tr. 542 (Dr. Liddell noted Plaintiff's minimal mental health care).  The ALJ reasonably discredited Dr. Liddell's opinion for its inconsistency with the medical evidence.

###### b.      Relied on Self-Reports

The ALJ found that Dr. Liddell relied heavily on Plaintiff's allegations.  Tr. 34.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605.  However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.  *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200.  As discussed *supra*, the ALJ reasonably discredited Plaintiff's symptom complaints.  The ALJ observed that Dr. Liddell appeared to give credit to many of Plaintiff's self-reports without medical evidence to corroborate Plaintiff's allegations.  Tr. 34; *see, e.g.,* Tr. 542 (Plaintiff alleged that he had been in a coma for three weeks, amongst other head injuries, after a car accident, but had worked at substantial gainful activity levels for a significant period of time thereafter); Tr. 542 (Plaintiff alleged that a recent MRI showed "significant degeneration in his frontal temporal region concerning for damage due to the head injury," but Dr. Liddell did not have the opportunity to review this MRI, which no other provider found concerning enough to offer a diagnosis and/or

treatment and no treating provider diagnosed a neurocognitive disorder or raised

neurocognitive concerns regarding Plaintiff's purported history of head injuries);

Tr. 543, 655, 684, 690 (Plaintiff alleged to Dr. Liddell that he had been clean and

sober since 1990, but the record indicates ongoing use of alcohol and cannabis).

Further, the ALJ noted that Dr. Liddell may not have been aware of the full extent

of the inconsistencies between Plaintiff's subjective complaints and the medical

record, as he reviewed very few of the medical records.  Tr. 34.  In the absence of

supportive objective findings, the ALJ reasonably concluded that Dr. Liddell's

opinion was based on Plaintiff's self-reports.  This was a specific and legitimate

reason to discount Dr. Liddell's opinion.

## C.    Step Five

Plaintiff contends the ALJ erred at step five because the ALJ relied upon an

RFC and hypothetical that failed to include all of Plaintiff's limitations.  ECF No.

14 at 19-20.  However, the ALJ's RFC need only include those limitations found

credible and supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217 ("The

hypothetical that the ALJ posed to the VE contained all of the limitations that the

ALJ found credible and supported by substantial evidence in the record.").  The

hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the

hypothetical that is predicated on the ALJ's final RFC assessment, must account

for all of the limitations and restrictions of the particular claimant.  *Bray*, 554 F.3d

at 1228.  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id.*  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).  A claimant fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

Plaintiff asserts that the ALJ improperly rejected the opinions of his providers, and when the vocational expert was asked about some of these additional limitations, he testified that Plaintiff would be unable to sustain competitive employment.  ECF No. 14 at 20 (citing Tr. 74-75).  Plaintiff fails to provide any specifics as to which limitations were improperly rejected.  Further, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence.  *See Stubbs-Danielson*, 539 F.3d at 1175 (challenge to ALJ's step five findings was unavailing where it "simply restates [claimant's] argument that the ALJ's RFC finding did not account for all her limitations").  For reasons discussed throughout this decision, the ALJ's adverse findings in his consideration of the medical opinion evidence are legally

sufficient and supported by substantial evidence.  Thus, the ALJ did not err in assessing the RFC, and he posed a hypothetical to the vocational expert that incorporated all of the limitations in the ALJ's RFC determination, to which the expert responded that jobs within the national economy existed that Plaintiff could perform.  The ALJ properly relied upon this testimony to support the step five determination.  Therefore, the ALJ's step five determination that Plaintiff was not disabled within the meaning of the Social Security Act prior to September 24, 2017, was proper and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1.  The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

///

///

///

///

///

///

ORDER - 61

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED March 24, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE